Thank you, Your Honor. Sterling Kidd on behalf of Nicholas Services, I would like to reserve three minutes for rebuttal. Nicholas intends to discuss three legal issues with the panel today. The first is that this panel should stay a decision in this matter until it is determined whether the Fifth Circuit or the Mississippi District Court that sent the case here will ask for the case to be sent back. What's the status of the case in the Fifth Circuit? Your Honor, that was argued orally by myself and Mr. Frummel, who's there with you today on February the 3rd, 2026. And to that, the court's question is an excellent one because it goes directly to my point, which is, or my argument on that point, which Glassdoor is really only opposition to the stay as it says, well, it's an indefinite stay, it could last forever. The publicly available data, including from the Bar Association of the Fifth Circuit, is that that court typically resolves cases within a couple months of oral argument. They also ask about this case. And so I get a question, Your Honor, go ahead. Well, I'm wondering, is it clear under Fifth Circuit law that they view themselves as having jurisdiction over the transfer question, or does that travel with the with the case to the transferee court? The Fifth Circuit will have to resolve that question, Your Honor. My understanding is it's law on the Ninth Circuit, and it's the other way that it travels to the transferee court is normally our view. And so if we ship a case out to the Sixth and not the Ninth Circuit, the district court here. But my question is whether you know what rule the Fifth Circuit has, because maybe they won't reach the question at all. That's certainly a possibility, Your Honor, that they won't reach the question. That was really the focus of the oral argument. No one has raised the transfer issue to us. That's right. I am not asking you to resolve the transfer issue. If we're the correct court in which the transfer question had to be raised, it's been forfeited. That would be correct. What do we make of the Platkin case where I take the Fifth Circuit said that the court could request the return of the transferred case? Is that a suggestion that either the Court of Appeals or the district court could not order the return of the transferred case, particularly once it's already gone up on appeal? That's absolutely correct as well, Your Honor. It will be discretionary if the Fifth Circuit agrees with me that it can direct the district court to make that request. Then once the district court makes that request, it would be discretionary as to whether the courts here accept that. The way we view it, the Fifth Circuit can direct the district court in Mississippi to make the request. Whether you all honor that request is, in our view, discretionary. But I would submit, Your Honors, that that question... Discretionary to us. That's right. Whether you all accept that is not yet before us because the request hasn't been made. Obviously, we may be here again if that request is ever made. For some reason, the district court or this court says, I'm not going to do it. Okay. Suppose that, just hypothetically, just suppose that we don't grant a stay and things have played out so that we're going to reach the merits of the case. Then why don't you tell us your views on the merits? Absolutely, Your Honor. I appreciate that. So, our point, Nicholas's point on Section 230 is really simple, straightforward, and based on the plain text of the statute we're talking about, Section 230. And so, in particular, Your Honors, 47 U.S.C. Section 230-F3 defines an information content provider as an entity that is responsible in whole or in part for the creation or development of content on its page. That in part, provision of the statute has to mean something. And as I'll discuss in just a moment, this court and bank has held that, in fact, it does mean something in roommates. But briefly, I also want to focus on Section 230-C. I mean, doesn't it mean to be relevant for purposes of escaping Section 230 immunity that it contributes in part to the speech with respect to the aspect that makes it unlawful or tortious? Yes, Your Honor. And how did you establish that here? What is the contribution of Glassdoor to the thing that makes it unlawful? Well, Your Honor, I can't do it any better than the district judge in Mississippi originally did when addressing these Section 230 issues. That's in the record at ER, the entire opinion is in the record at ER 23 through ER 41. But what the district court said in that respect, I'm looking down because I'm going to quote, negative review from an employee carries more weight than a review from a third party or a contractor. And by forcing users to state they are or were employees and giving them no other options, Glassdoor is... Nearly, you know, putting a form that asks you to identify your relationship to the company being reviewed is a contribution to defamatory content? Well, we would say yes, answering that question is silo, Your Honor. There's other points I'll make about how Glassdoor contributes, but let's stay on my first point for now and I'll answer your question. Counsel, factually, I want to get some clarification on that point. It was a drop-down box, correct, that either said employee or, you know, not employee or former employee, current employee or former employee, correct? Your Honor, frankly, I'm not exactly sure of the mechanics, whether it's a drop-down box or text is typed in, but it is required. I mean, what is clear in the record is it is required. The user has to select one of the two options. It can't say other. It can't... The user cannot bypass that option if the user wishes to post. And if there was that option, though, for the user to say other, would we still be here today? Your Honor, it's a fair question. I'm not sure. I think probably so for the reason, the other points that I'll make about the ways that Glassdoor contributes. And so I'll get to those in just a moment, which I think will complete the answer to your question, Your Honor. But I want to make sure I've answered the prior question as well. And that is, the fact of the matter is, is again, let's return to the text of the statute. It says in whole or in part. And so the point that the district judge in Mississippi made was, you are saying you are an employee or a former or current employee, and then you're saying all of these negative things. Those two working together create the defamatory content. But doesn't that, I mean, the illegality here is defamation. And so it really could cut either way requiring that someone be an employee or a former employee, right? I mean, I think that sometimes an employee posting will make it, I don't know, in terms of which element of make the injury, which element of defamation it matters to, but might make the injury stronger. But it also might make the truth value of it more credible. That doesn't seem to be the same as what we said in roommates, where the checking the very box was the illegality. And so, your honor, I'm glad you asked that question because I don't think we have to satisfy roommates like a round peg in a round hole to escape section 230 immunity. I think we have to set aside the statute, which again, refers to creating content in whole or in part. And so, again, you conceded the proposition that the contribution that Glassdoor makes has to go to the thing that makes it unlawful and defamatory. And the mere fact that a person identifies themselves as a current employee or a former employee contributes nothing to making it defamatory. It's in fact going to be a truthful statement of the relationship between the company. And then it's when they go and say, what are the pros of working there? What are the cons? That's where you're saying the defamation is. So, I don't see how the contribution of current or former employee contributes to that which makes it illegal. So, your honor, one point of clarification. It actually, and this isn't a major point, but I just want the record to be clear in case it influences the court's thinking at all. These folks are not employees of Nicholas Services. So, that statement is false. Nicholas Services has no employees and that's reflected in the record as one of our factual allegations. I mean, but that's getting to a very technical point about how the corporation is structured where the brand name is Nicholas, but in fact, it has a separate LLC and legally all the employees are attached to the LLC, but the public facing entity is Nicholas Air. And you're saying that making, failing to follow the formalism of the sub versus the publicly facing brand is something that contributes to its defamatory content? Well, not really, your honor. I just wanted to clarify, you mentioned it being a true statement. So, I want to be clear that it's a false statement, but- Okay, but you don't think that any inaccuracy on that point contributes to its defamatory content? Other, well, I think it all contributes to the defamatory content in the sense, your honor, that again, these folks are coming forward saying, I know what I'm talking about. That's the part that Glassdoor created. These people know what they're talking about and here's what they have to say. But doesn't, I mean, Nicholas itself has held itself out as a hiring and recruiting agent here. So, it doesn't seem like that can much to whether something's defamatory. Well, what I'm going back to, your honor, thank you for allowing me to clarify, is my original point, which is saying these folks are employees or former employees of any entity, whether it be Nicholas or the right entity core, and then allowing, and then asking them, actively soliciting negative feedback from them is what makes it defamatory. Mr. Kidd, what else would you, you raise a request to amend. What other facts do you think you could plead if this weren't enough, that would be enough? Yes, your honor. I think the clearest thing that we would allege, I would submit we've already alleged it, but I think we could do it in a clearer fashion, which is, we also believe that Glassdoor's business model is to use its algorithm to actually promote negative content to the exclusion of the positive content. Now, that would very clearly be barred by Section 230, or excuse me, would very clearly survive Section 230. And Anderson v. Tick Tock from this court at 116F4180 says so. We cited that case in our brief and to the question of amendment, your honor, as we pointed out, the district court did not address at all our request to amend, and this court has been clear that when a plaintiff makes that request, if a district court is going to deny it, it at least has to explain why. Did you just do that at the hearing? Yes, your honor. I believe that's correct. Your honors, I, to wrap up then, we believe that Glassdoor creates content a number of ways. We didn't fully cover some of the other ways that it creates content. I know that I'm into my rebuttal time now, so maybe I'll just address it then, unless the court prefers something else. Okay. All right. Thank you, counsel. We will hear now from Mr., is it Frimmel or Freimel? Frimmel. All right. Good morning, justices. May it please the court. My name is Bill Frimmel, and I represent Glassdoor. This case is about whether Nicholas can hold Glassdoor liable for third-party reviews by characterizing the neutral review tools offered by Glassdoor. Counsel, I apologize for interrupting, but I know we're going to have a bunch of questions for you. My first question is, maybe you can give me a little bit better direction. That box, because that seems to be the big issue. Employee, former employee, did people type it in? Was it a drop-down box? And does that not make Glassdoor a creator? Two answers. One, the logistics. Two, the legal. The logistic question is answered at Exhibit D to the first amended complaint of Nicholas. And I'm looking at it here. It has a bubble by current employee, a bubble by former employee, and then it has a drop-down for your employment status. So it is not anything you would type in. It is you click or drag down. That absolutely does not cause Glassdoor to be author of defamatory content. I'm going to jump between two cases to explain why. Can you pull the microphone up a little closer? Certainly. Let's get a little closer. So in roommates, when you have a predetermined answer, the only way that 230 doesn't prevent liability there is if that answer is inherently illegal itself or inherently defamatory. And as we all know in Glass, in roommates, that was asking discriminatory-based questions for housing needs. But roommates also said, let's be very careful. We're limiting our a pullback of immunity because of its inherent nature of causing illegality. If you ask the same very questions in a dating profile, you have immunity because they're not inherently illegal or defamatory. So there is a very bright line in roommates, and they went out of their way to make the court to make that point. The real analogy here is the Carafano case. That's what we have here. In Carafano, that was a dating website. And there, there were drop-down menus that said, what's your name? What's your sex? Where are you? And there, someone falsely represented that they were someone else. They put in false answers to predetermined drop-downs. That did not cause Matchmaker to lose its immunity under 230. So what do we have here? Let's compare what we have here to Carafano. Carafano is designed to elicit questions for those that are seeking to have a relationship. That was the design. Someone abused it. But the false comments in Carafano were not the websites. They were the What do we have here? Glassdoor is designed for employees, current or former, to explain to the world, to facilitate, to help people understand if they would want to work somewhere. Maybe there's something great to work there for. Maybe there's something bad. But the point is for employees, current or past, to express their opinions of what it's like to work there. Thus the option, current or former. If someone actually hasn't been an employee of Glassdoor, they shouldn't be on the site reviewing the company. That falsity is not Glassdoor's cause. That's the author selecting a false answer. That's not Glassdoor making a false statement. That's Carafano. And that's the bright, bright line that Roommates draws. It's not inherently defamatory to ask someone if they're a current or former employee. It's the false response from the author of the review of the user of the website that's causing the problem. What about the very listing of Nicholas, which has no employees on Glassdoor? Well, certainly that's not defamatory to say Nicholas has employees. And again, the website's False. False. Even the falsity. False is not defamatory. So creating the website does not cause a lack of immunity under Section 230. Now, the panel touched on whether or not Nicholas actually has employees. Well, it may not create, those are two different things. It may not create liability for defamation, but is creating a website itself protected by 230? Yes, it's based on information provided by third parties. The website is collecting a form submitted by a proposed, someone that says they have been an employee and they have generated then a review site for that company. Governed by Carafano or your reading of Carafano? Yes. Or roommates. And I think we can expound on that. It goes to the point of 230, which protects websites from having to verify every single person that posts. So now if someone comes and says, I was an employee of Nicholas Air, does Glassdoor now have to somehow verify with that user or through independent purposes or independent mechanisms to verify whether or not they're a user? And that's what 230's purpose is, is to avoid that sort of verification for every everybody that posts. What's your response to your opposing counsel's argument that he should have been granted leave to amend so that he can allege additional facts to say that the business model is to use an algorithm that promotes the negative over the positive? Presumably, maybe that gets more clicks. So what's your response to that? My response is that the proposed amendment still goes to the collection and presentation of user defined content and user proposed content. But at that point, then you are contributing the content. If you just get the content and you just post it, that's one thing. But if you start organizing the content and you promote some over others and downgrade and lift, I mean, those are the kind of things that the Supreme Court has said can give a website operator First Amendment protection precisely because you're contributing to pushing, downgrading items. You're making selective decisions. So wouldn't that be out of Section 230 if that's, in fact, if he can allege that you were promoting content and downgrading content and not just posting neutrally what came in? So bear with me. I'm going to get there, but I think there's a few steps to get there. First is this was never pleaded, and it was brought for the first time in a reply brief to this panel. So I don't think it's properly before the court. But not even in the opening brief, not in front of the district court. It was for the very end. I will suggest it wasn't even brought forth in the in the reply in this court. It says this is what for the first time in reply before this court, Nicholas says it. I'm reading this. It's page nine of their brief. Nicholas could help the reply of the opening. The reply of the reply. Nicholas could allege that Glassdoor helped to author the March 23rd review. Nicholas could attest that these statements and others like them are false. Nicholas could amend to more clearly allege that Glassdoor engages in content creation and that its entire business model is premised upon negative posts and actively promoting negative posts. Promoting negative posts is not defamation. Of course, we contest that that's what we do, but that's not defamation. That's right. But promoting posts might be your speech and you might be you have a First Amendment defense. It might be you'd have a defense on the merits of defamation. But if you're promoting posts, wouldn't that be in some sense your speech? No, because what Nicholas is doing is they're relying on the Third Circuit's argument in Anderson versus TikTok and the Net Choice Supreme Court case. And in there we have algorithmic decisions that unilaterally on behalf of the website push to who they think want to see certain things. The Anderson is the tragic issue of, you know, the self-suffocation videos to a 10 year old girl. That user, that girl did not go out and seek those reviews or seek how to do it. She didn't search for, I don't know the phrase, self-affixiation. That's the big difference here. Glassdoor is not compiling negative reviews and pushing them out, telling people, hey, I think you over here may be interested in these negative reviews because you have searched for companies in the aerospace industry. What's happening, what the most that Nicholas could allege is that Glassdoor takes the reviews that, or the ratings, the one to five stars and compiles those and then promotes those generally speaking. They don't, like in Anderson and Net Choice, take algorithmic decision making itself and go out and make an expression to everyone. Someone would have to search on Glassdoor to find the negative reviews for a company. And that's the beginning of Kimsey. That's the Kimsey case here, this circuit's court, this circuit's case, where they say, of course, a star rating in, I think it was Yelp, that is not an information content provider. The website is not acting as the providing content. So we start with that from collecting reviews. And if people can go and search and find out how many reviews there are, even if those have been collected and they're highlighted on a page about that company, that's different than what's happening in the Third Circuit with Anderson. This court has not gone there and I believe would be contrary to roommates. Mr. Frimmel, would it be cleaner for us to at least stay any decision here until we hear from the Fifth Circuit? I'm glad you asked that and the short answer is no. I spent a wonderful time in front of the First Circuit. It's an incredibly complicated case, but only from the sense of, should Nicholas have sought to pull the case back through writ of mandamus versus appeal? I mean, but do you know whether or not there is an answer in existing Fifth Circuit precedent to whether or not the Fifth Circuit believes that an appeal from the transferor court is valid or do you have to go to the transferee's court of appeals? Let me tell you what the Fifth Circuit has said and you all referenced the Platkin case. This is a quote from Platkin. The transfer ended our control over the case. It went on to say they can- Platkin is what? That's the Fifth Circuit case. That's Fifth Circuit. Fifth Circuit. So they say once it goes out to another district court in another circuit, the authority is gone. The authority for the case is out there. This is from my outline in front of the Fifth Circuit. The court and defense distributed versus Platkin, and I cite it, could not have been more blunt. Quote, the transfer ended our control over the case. Any issue about the impropriety of the transfer would have been needed to have been raised in the transferee district court here and then immediately brought up by mandamus or something else to us. But none of that's been done. Well, of course, none of that's been done. But the argument in the Fifth Circuit, I can tell you, was what was the appropriate timing for Nicholas to have done that in the Fifth Circuit? And then there was the question, so what? What if they had done it timely? We said they didn't do it timely. They said they did. But then the appellate court was asking, well, so what? What if they did do it correctly? And the answer came back, the Fifth Circuit doesn't have jurisdiction over it anymore. And the most the Fifth Circuit could do was to have the district court ask either the Ninth Circuit or the Northern District of California nicely, may we have the case back? We think we sent it to you improperly. That was crystal clear in the Fifth Circuit. I will hear from Mr. Kidd, but I believe we were all on the same page during oral argument about that one. Now, did anyone raise to the Fifth Circuit the argument that it was a mistake not to send the rest of the case to us? We didn't raise that on the appellate level. So either the cases will remain split or maybe we'll be asked nicely whether we'll send it back. But I'm just trying to figure out the decision tree. What are the possibilities how this could play out? The other plaintiff, which is CORR, C-O-R-R, that will remain in the Fifth Circuit. And that's just done because no one's asking for it. It's not in the card. Correct. We have not asked the Fifth Circuit to push it into California. And yes, that's the answer to your question, I believe. Yes. I think my time is up, but if you have any other questions, I'm happy to. Okay. All right. Thank you, counsel. All right. Then we'll hear rebuttal. Thank you, Your Honors. Just a few points here. First of all, my friend on the other side relied heavily on Carafino in his presentation. As a preliminary matter, Carafino's a summary judgment case, not a Rule 12 case. But in addition to that point, Your Honor, the questions in Carafino, according to this court, the answers bore no more than a tenuous relationship to the actual questions asked. And here, what we have is quite different. Glassdoor says, tell us what's bad about the company. And the users answer the question. And they answer that question in a number of different ways. There was a statement about the comments not being defamatory. And I have a few examples of some of the cons that these folks provided when asked directly to provide negative comments. But the comments can't do it. It would have to be defamation at the prior stage there. Why would it be defamatory for them to solicit negative comments? Well, my view, Your Honor, is that by asking specifically for negative comments, they are helping, they are creating the content in part. I know, but I'm looking at the form that's in complaint, and it starts with pros share some of the best reasons to work at Nicholas Sayre. Cons share some of the downsides of working at Nicholas Sayre. How can you make it, how could you make it more neutral? Well, Your Honor, I think that, I think the answer to your question is, how could you make it more neutral, is exactly what they did in roommates that the court found was immune. You know, roommates has part of it, part of the forms and roommates were were not immune and part of them were. And the prompts that this court held were immune was a very open-ended question. And that is, quote, take a moment to personalize your profile by writing a paragraph or two describing yourself and what you're looking for in a roommate. So, well, how they could have been neutral, Your Honors, is by saying, tell us about your time working at Nicholas Sayre, not tell us what's so bad about working at Nicholas Sayre. And you couple that with them requiring these folks to state that they are employees or former employees and that all of that working together renders the website. But why wouldn't, I mean, then, why wouldn't we have viewed Yelp in a different light, for example, where you have a series of stars? And so, just the fact that you can give anyone a one-star rating rather than a five-star rating makes that a possibility. Is there, is an obligation that Yelp start at, you can give from three to five stars, but you can't give, there has to be great inflation now for these? Well, Your Honor, I think every one of these cases and the precedent is clear on this, I believe, that they have to be judged on their unique facts. And so to your question about Yelp, Your Honor, you know, I don't know what the answer to that is in terms of a one to five-star rating. What I do know is, you know, it doesn't directly say tell us what's bad about the company. It just says go from one to five. And so that's how I would distinguish Yelp factually. Your Honors, I know I'm over my time, but I do want to, if the court will allow me just a brief indulgence in terms of what the Fifth Circuit law is. I mean, I think we're all basically on the same page. The Fifth Circuit no longer has control to directly reverse the district court decision and require the case to come back here. It can make the request that that be done, if it so chooses, in my view. And to answer one of the questions asked by the panel, what the Fifth Circuit has said, if you want to directly appeal that, you file a written, where the Fifth Circuit does maintain control, and it's not just a matter of a request. What the panel has indicated to us, and I believe what the opinion will probably ultimately reflect, is that if you want to directly challenge it, you have to file a written mandamus before the transfer order is effectually. Okay. So that's, I think that's what the court was asking. So I really appreciate you, the court, allowing me to argue this remotely, given my travel difficulties yesterday. Thank you very much. Okay. It was a bit of a nightmare. All right. All right. Thank you very much, counsel. Thank both counsels for their helpful arguments in this case, and the case just argued will be submitted, and we will stand in recess for five minutes.
judges: COLLINS, JOHNSTONE, ALBA